PAPANIKOLAS BROTHERS ENTERPRIS-ES, a partnership, Plaintiff and Respondent,

v.

SUGARHOUSE SHOPPING CENTER AS-SOCIATES, a partnership, et al., Defendants and Appellants.

No. 13821.

Supreme Court of Utah.

May 27, 1975.

Kenneth W. Yeates and J. Rand Hirschi, Price, Yeates, Ward, Miller & Geldzahler, Wayne C. Durham and Hollis S. Hunt, Durham, Swan & Hunt, Salt Lake City, for defendants and appellants.

Edward J. McDonough and Michael R. Murphy, Jones, Waldo, Holbrook & McDonough, Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Plaintiffs initiated an action against defendants for the enforcement of a restrictive covenant running with the land. The action proceeded against Sugarhouse Shopping Center Associates, a partnership; Spence Clark and James A. Collier, dba Financial Management Service, hereafter Associates; and the American Oil Company, a Maryland corporation, hereafter American. The complaints against the other defendants were dismissed prior to hearing testimony. From a judgment enforcing the specific covenant; awarding American judgment against Associates for expenses incurred by American in complying with the restrictive covenant; and awarding plaintiffs judgment against Associates for

expenses in the sum of $575 together with costs; defendants appeal.

In 1954, A. R. Curtis And Sons Company and the plaintiffs were developing a shopping center on various parcels of adjoining property which each owned individually, and some of which they desired to set aside for automobile parking. On March 24th of that year these two parties entered into an agreement which set aside portions of certain parcels owned by each, to be used for automobile parking. This agreement constituted a covenant running with the land, was recorded April 27, 1954, and did not terminate until December 31, 1999, unless sooner revoked by agreement. The subservient parcel with which we are here concerned can be described as the east 50 feet of the south 152.5 feet, of Block 6, Union Heights.

Some years later Associates became the successor in interest to A. R. Curtis And Sons Company; and on October 14, 1969, Associates entered into a lease with American, which encumbered the east 50 feet of the south 152.5 feet of Block 6, Union Heights. By agreement of these two parties a rider was attached to said lease wherein, American acknowledged awareness of the restrictive covenant, and provision was made for Associates to indemnify American, for losses incurred by American, should the restrictive covenant be enforced and American required to abandon or relocate its improvements on the subservient parcel.

■ Defendants make five assignments of error, which, in large measure, called to account the trial court's interpretation of the facts adduced at trial. This being a proceeding in equity we sit in review of the facts, as well as the application of the law. The assignments of error will be dealt with seriatim.

*Balance of Injury.*

■ Defendants urge that the "balance of injury" test should have been applied by the trial court in making its determination to issue the mandatory injunction. Under this theory where an encroachment does not irreparably injure the plaintiff; was innocently made; the cost of removal would be disproportionate and oppressive compared to the benefits derived from it, and plaintiff can be compensated by damages; equity may in its discretion elect not to compel removal.[1]

■ The benefit of the doctrine of balancing the equities, or relative hardship, is reserved for the innocent defendant, who proceeds without knowledge or warning that he is encroaching upon another's property rights.[2] Where the encroachment is deliberate and constitutes a wilful and intentional taking of another's land, equity may require its restoration, without regard for the relative inconveniences or hardships which may result from its removal.[3]

■ In the instant action defendants with full knowledge of the covenant took a calculated risk that plaintiffs would not assert their rights. The provisions of the lease rider clearly substantiate the finding that the defendants wilfully and intentionally encroached upon the parking easement. There is no basis to find an abuse of discretion on the part of the trial court in ordering its removal.

1. Lewis v. Pingree National Bank, 47 Utah 35, 53, 151 P. 558 (1915); Mary Jane Stevens Company v. First National Bank Building Company, 89 Utah 456, 519, 57 P.2d 1099 (1936); Brown Derby Hollywood Corporation v. Hatton, 61 Cal.2d 855, 40 Cal. Rptr. 848, 395 P.2d 896, 898 (1964).

2. Bach v. Sarich, 74 Wash.2d 575, 445 P.2d 648, 653 (1968).

3. Mary Jane Stevens Company v. First National Building Company, at page 514 of 89 Utah, 57 P.2d 1099; Golden Press Inc. v. Rylands, 124 Colo. 122, 235 P.2d 592, 595 (1951); 28 A.L.R.2d 679, 705, Sec. 8 of Annotation: Mandatory Injunction to compel removal of encroachment.

*Laches*

▉ Defendants urge laches as a bar to enforcement by plaintiffs. They claim that a sign was erected on the premises in February or March 1970, announcing the construction of the service station. The court found that plaintiffs did not observe the construction until August 1970, when one of the plaintiffs, Nick Papanikolas, noticed that a prefabricated building was being erected on the premises. Plaintiffs promptly contacted defendants and objected to the encroachment. Defendants contend that plaintiffs should have asserted their objections at the time the sign was erected. There is nothing in the evidence to show where that sign was or that it indicated where the construction was to be, and furthermore, the location of the building itself is not situated on the subservient area. Defendants proffered no testimony to establish the date the structures constituting the encroachment were erected. From this evidence the trial court could properly conclude that plaintiffs promptly asserted their objections.

▉ After an exchange of letters by counsel for the parties, during August and September 1970, this action was filed in March 1972. Defendants assert that this failure to file the action (18 months after the station was completed) constituted laches. It is significant that during this interim Associates were conducting negotiations with plaintiffs, in an attempt to purchase their interest in the center.

▉▉ Laches is not mere delay, but delay that works a disadvantage to another.[4] To constitute laches, two elements must be established: (1) The lack of diligence on the part of plaintiff; (2) An injury to defendant owing to such lack of diligence. Although lapse of time is an essential part of laches, the length of time must depend on the circumstances of each case, for the propriety of refusing a claim is equally predicated upon the gravity of the prejudice suffered by defendant and the length of plaintiff's delay.[5]

▉ The existence of laches is one to be determined primarily by the trial court; and reviewing courts will not interfere with the exercise of the trial court's discretion in the matter, unless it appears that a manifest injustice has been done, or the decision cannot reasonably be found to be supported by the evidence.[6] In addition, a reasonable delay caused by an effort to settle a dispute does not invoke the doctrine of laches.[7]

▉ In addition to delay, factors considered by the courts in determining the existence or nonexistence of laches are the relative harm to defendant, in view of plaintiff's delay, if he is required to remove the structure which violates the covenant; the relative harm to the plaintiff, if he is confined to an action for damages; the proximity of the expiration date of the covenant; and the defendant's good faith, or the absence thereof; in connection with his violation of the covenant.[8]

The language of *Archambault* v. *Sprouse*[9] seems appropriate when applied to the facts in the instant matter.

. . . one who openly defies known rights, in the absence of anything to mislead him or to indicate assent or abandonment of intent to oppose on the part of others, is not in a position to urge as

4. Mawhinney v. Jensen, 120 Utah 142, 148, 232 P.2d 769 (1951); Mary Jane Stevens Company v. First National Building Company, at page 515 of 89 Utah, 57 P.2d 1099.

5. Decker v. Hendricks, 97 Ariz. 36, 396 P.2d 609, 611 (1964); Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough, Alaska, 527 P.2d 447, 457 (1974).

6. Bodkin v. Silveira, 49 Cal.App.2d 1, 120 P.2d 910, 916–917 (1942).

7. Reading v. Keller, 67 Wash.2d 86, 406 P.2d 634, 637 (1965).

8. 12 A.L.R.2d 394, 398, Sec. 2, Anno: Laches or delay in bringing suit as affecting a right to enforce restrictive building covenants.

9. 215 S.C. 336, 55 S.E.2d 70, 12 A.L.R.2d 399 (1949).

a bar failure to take the most instant conceivable resort to the courts. After the right has been invaded under circumstances which would not defeat a plaintiff in seeking relief, and no substantial harm is shown to have accrued to the wrongdoer from delay, there is not the same imminent necessity for early enforcement of demands as exists before conditions have become fixed. Mere lapse of time, although an important, is not necessarily a decisive, consideration.

. . .

Under the circumstances of this case, the trial court did not abuse its discretion, in its determination that plaintiffs were not guilty of laches.

*Covenant Validity v. Changed Conditions*

The trial court found that the shopping center was substantially the same at the time of trial, as on March 24, 1954. The same tenants, or tenants in similar retail sales enterprises, occupied the shopping center.

▇▇▇ Before a change will vitiate a covenant, it must be of such a magnitude as to neutralize the benefits of the restriction, to the point of defeating the object and purpose of the restrictive covenant. The change required to afford relief is reached, where the circumstances render the covenant of little or no value.[10] Here the purpose of the restriction is yet a valid one, and the contemplated benefits to the plaintiffs still exist. The purpose of the covenant has neither ceased nor become useless.

*Ambiguity of the Covenant*

▇▇▇ The 1954 agreement recites by description the parcels of property owned by each of the original parties. The agreement then provides that the parties are developing a shopping center in the area covered by the above described lands, and desire to designate and set aside certain portions of that land to be used for automobile parking.

On page 3 of that agreement the subservient parcel under consideration is set out as parcel 2, and described by metes and bounds. The agreement says of this parcel; along with others, that it:

> *Shall be parking areas for motor vehicles* to be used in common by the parties hereto and the tenants of their respective lands described above . . . and for the accommodation of customers of such tenants, and the parties hereto, while transacting business with said parties or shopping in the premises of the tenants of the last mentioned parcels of land. [Emphasis supplied.]

The agreement goes on to establish these covenants as running with the land, and provides for a termination date.

This agreement was recorded, and its language leaves no room for question. That defendants understood it would appear to be clear from the lease rider entered into by American & Associates. The use provisions of the agreement designating those entitled to use the parking areas in no way modifies or creates an ambiguity in the language set out. The terms are mandatory and the purpose clearly set forth.

*Failure to Join an Indispensable Party*

▇▇▇ This last point can be simply dealt with. The trial court properly refused to dismiss the action when defendants asserted, for the first time, the defense of failure to join an indispensable party, at the trial on the merits. Under Rule 12(h), U. R.C.P., when this defense is asserted at trial, it shall be disposed of as provided in Rule 15(b), in the light of any evidence that may have been received. At the trial, defendants did not adduce evidence sufficient to establish and identify an interest on the part of the alleged "indispensable party," so as to require joinder under Rule 19(a), U.R.C.P.

An observation about equitable remedies, such as those which are here sought, was

10. Metropolitan Investment Co. v. Sine, 14 Utah 2d 36, 41, 376 P.2d 940 (1962).

made in Decker v. Hendricks.[11]   What the court said there seems to be appropriate here.

Equitable remedies are a matter of grace and not of right and equitable discretion should not be used to protect an intentional wrongdoer.   We find no abuse of discretion in the trial court's judgment.

The judgment of the court below is sustained.   Costs are awarded to respondents.

HENROID, C. J., and CROCKETT, ELLETT and TUCKETT, JJ., concur.

---

11.   97 Ariz. 36, 396 P.2d 699, 612 (1964).