2005 UT 82

Eva C. JOHNSON, an individual; Diane Pearl Meibos, an individual; Alayna J. Culbertson, an individual; and Blaine Johnson, an individual, Plaintiffs and Appellees,

v.

HERMES ASSOCIATES, LTD., a Utah limited partnership; Nick S. Vidalakis, an individual; Fort Union Associates, L.C., a Utah limited liability company, and Does I–X, Defendants and Appellants.

No. 20040729.

Supreme Court of Utah.

Nov. 22, 2005.

Rehearing Denied Jan. 18, 2006.

Ronald G. Russell, Jeffrey J. Hunt, David C. Reymann, Salt Lake City, for plaintiffs.

Mark O. Morris, David P. Williams, Salt Lake City, for defendants.

WILKINS, Associate Chief Justice:

¶ 1 Appellants seek review of the district court's holdings in this real property dispute, alleging that the district court erred when it (1) granted Plaintiffs' motion for partial summary judgment; (2) awarded mandatory injunctive relief, which imposed specific metes and bounds requirements on Hermes; and (3) declined to balance the equities in granting the motion for partial summary judgment. We affirm the district court on all three of its holdings.

## BACKGROUND

### I. RELEVANT FACTS

¶ 2 When reviewing a rule 56(c) motion for summary judgment, we recite the facts in the light most favorable to the non-moving party. *See Woodbury Amsource, Inc. v. Salt Lake County*, 2003 UT 28, ¶ 4, 73 P.3d 362. Thus, in reviewing these facts, we present them in a light most favorable to Appellant Hermes, the commercial developer in this case.

¶ 3 In 1991, Hermes sought to develop property adjoining its existing shopping center known as the Family Center at Fort Union (Family Center). At the time, the adjoining property was located in a portion of unincorporated Salt Lake County, which has since been annexed into Midvale City. Because Hermes did not own all of the adjacent land it desired to use for the Family Center extension, Hermes approached the landowners with offers to purchase their property. All landowners, other than members of the Croxford and Johnson family (Appellees), whose land has been in the family line for over 100 years (the Croxford Property), sold their properties to Hermes. Unable to purchase the Croxford Property, Hermes revised and followed a modified development

plan which eliminated building on the Croxford Property but included construction on three sides of it.

¶ 4 Because Salt Lake County ordinances prohibited Hermes's intended use of the purchased land, Hermes requested that the County change local zoning requirements and, in the interim, approve a conditional use permit which would allow Hermes to construct the expanded shopping center. The County approved a change to the zoning ordinance and granted Hermes a conditional use permit,[1] subject to three specific conditions: (1) the Hermes plan must widen 7240 South, a public right-of-way running directly south of Hermes's development site and west of the Croxford Property, by an additional 17 feet, making the public right-of-way 50 feet in width; (2) Hermes must dedicate 8.5 feet of the widening to install curb, gutter, and sidewalk on 7240 South; and (3) the County must vacate the portion of North Union Avenue running north of the Croxford Property. Hermes and the County agreed to satisfy the conditions, and Hermes also conveyed an access easement to the west of the Croxford Property.

¶ 5 The County subsequently passed Ordinance 1275 in August 1994, which vacated and permanently closed the public portion of North Union Avenue north of the Croxford Property. Specifically, the ordinance denied North Union Avenue "public street" status and vacated an eight-foot-wide section of the street's north side while permanently closing the remaining portion. Finally, Ordinance 1275 provided that Hermes convey to the County a twenty-five-foot right-of-way running along the western boundary of the Croxford Property.

¶ 6 Thereafter, Hermes's contractors started blocking off and tearing out portions of North Union Avenue and commenced construction of a commercial structure known as Retail 3, currently occupied by retail tenants. Before Hermes started construction, Appellees, through counsel, notified both Hermes and the County that Retail 3 encroached

upon 1070 East Street, the road running from north to south along the Croxford Property's western boundary, and restricted not only private access to their property but also the access of public services such as sanitation, fire, and snow removal. Since the commencement of construction, Appellees have also notified Hermes that the light from large overhanging floodlights and the noise from the loading dock and trash compacting facilities at the Family Center disturb the peaceful use and enjoyment of their property.

## II. PROCEDURAL HISTORY

¶ 7 Alleging that the proposed 25-foot-wide public right-of-way violated the County's roadway ordinances, Appellees challenged both the substantive and procedural adoption of Ordinance 1275, seeking to have the County enforce the conditions of Hermes's conditional use permit. Appellees also sought a temporary restraining order to halt the violations, but the complaint was dismissed without prejudice by the district court, and the Appellees were instructed to exhaust administrative remedies. Accordingly, Appellees raised their concerns with the County, requesting that the County enforce the applicable ordinances, building codes, and conditional use permit provisions. Hermes requested that the County grant exceptions to the roadway standards to the extent they were applicable to the streets at issue in this case. The County granted the request.

¶ 8 In 1995 and 1996, Appellees instituted this action against Hermes and re-filed their action against the County, claiming that Hermes had violated county ordinances, roadway standards, and the conditional use permit issued by the County. Although the district court found that Appellees' claims were not barred by res judicata or collateral estoppel, it granted Hermes's cross-motion for summary judgment, concluding that the two streets were not public streets, and therefore, Hermes's actions were in accor-

---

1. Only after first obtaining approval from many government agencies, including the Fire Division, Board of Health, the Building Inspection System, the Union Community Council, the Urban Hydrology Division, the Water and Sanitation Department, the Development of Services Division, the traffic engineer, and the Utah Department of Transportation.

dance with both the conditional use permit and county requirements.

¶ 9 Appellees sought our review, and in *Culbertson v. Board of County Commissioners*, 2001 UT 108, 44 P.3d 642 [hereafter *Culbertson I*],[2] we reversed the district court's grant of summary judgment by concluding that the streets at issue were public and must comply with the terms of the conditional use permit and other county zoning and roadway ordinances. We also held that the County erroneously granted the roadway exceptions because the County failed to follow its own rule for granting exceptions.[3]

¶ 10 In Culbertson I, we explained that Appellees would be entitled to injunctive relief if they could prove special damages peculiar to themselves and " 'over and above the public injury which may be caused by the violation of the zoning ordinance.' " *Culbertson I*, 2001 UT 108, ¶ 54, 44 P.3d 642 (quoting *Padjen v. Shipley*, 553 P.2d 938, 939 (Utah 1976)). Ultimately, we determined that despite Hermes's completed construction of the building extensions (Retail 2 and Retail 3), with a willful and intentional ordinance violation, proper relief to Plaintiffs may require restoration of the road. We remanded the case with specific instructions for the district court to make "finding[s] on summary judgment regarding the extent of plaintiffs' injuries." *Id.* ¶ 55. The district court granted Appellees motion for partial summary judgment, finding that special damages and irreparable harm were established without any dispute as to material facts. *Id.*

¶ 11 Hermes now brings this appeal from the district court's decision on remand, arguing that (1) the district court erred in granting Appellees' motion for summary judgment; (2) the specific metes and bounds set forth by the district court's order are contrary to the ordinances in effect at the time, and illogical; and (3) the district court abused its discretion by failing to balance the equities.

## ANALYSIS

### I. THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT WAS CORRECT

¶ 12 We begin by reviewing the district court's grant of partial summary judgment in favor of Appellees. Hermes requests a reversal, claiming to have raised disputed issues of material fact regarding Appellees' special damages and irreparable harm, which render partial summary judgment improper. Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). We review the district court's summary judgment ruling for correctness, granting no deference to its legal conclusions, and consider whether it correctly concluded that no genuine issue of material fact existed. *See Lovendahl v. Jordan Sch. Dist.*, 2002 UT 130, ¶ 13, 63 P.3d 705; *Woodbury Amsource, Inc. v. Salt Lake County*, 2003 UT 28, ¶ 4, 73 P.3d 362; Utah R. Civ. P. 56(c). Furthermore, as previously noted, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party," in this case, Hermes. *Arnold Indus., Inc.*, 2002 UT 133, ¶ 11, 63 P.3d 721.

---

2. We recognize that our 2001 opinion referred to two lower court rulings as *Culbertson I* and *Culbertson II*. However, in this particular appeal, we refer to *Culbertson I* as our first opinion on this case, which we issued in 2001.

3. Salt Lake County Ordinances, Chapter 14.12.150 permits the county commission to grant roadway standard exceptions where "unusual topographical, aesthetic or other exceptional conditions or circumstances exist ... after receiving recommendations from the planning commission and the public works engineer, provided that the variations or exceptions are not detrimental to the public safety or welfare." *Culbertson I*, 2001 UT 108, ¶ 48, 44 P.3d 642. This court noted that while the County received the required recommendations,

> nothing suggests any "unusual topographical, aesthetic or other exceptional conditions or circumstances," other than the conditions or circumstances the County created when it improperly attempted to transform North Union Avenue from a public street to a "closed street" and when it erroneously took the position that 1070 East was a private way.

*Id.* at ¶ 48.

¶ 13 A court may grant a permanent injunction if it determines that (1) the petitioner establishes standing by demonstrating special damages, (2) the petitioner has a property right or protectable interest,[4] (3) legal remedies are inadequate, (4) irreparable harm would result, (5) court enforcement is feasible, and (6) petitioner merits the injunction after balancing the equities. *See* 1 Am.Jur.2d *Adjoining Landowners* § 133 (2004); 42 Am.Jur.2d *Injunctions* § 33 (2004); Kenneth T. Young, *Anderson's American Law of Zoning* § 29.11 (4th ed.1997); 13 *Moore's Federal Practice* § 65 (3d ed.2005). Special damages and irreparable harm are the only issues before us. The other factors are either presumed satisfied, or, as to balancing the equities, unnecessary in this case. Hermes purports to have presented material facts bringing Appellees' special damages and irreparable harm into dispute, making summary judgment and mandatory injunctive relief inappropriate. We affirm the district court's findings of both special damages and irreparable harm.

### A. Special Damages

¶ 14 Hermes claims to have presented sufficient evidence to dispute Appellees' allegation of special damages, which would make summary judgment inappropriate. Moreover, if proven, the absence of special damages defeats Appellees' standing to bring this case. Accordingly, Hermes argues that the trial court should have recognized that there were material factual disputes regarding special damages, which should have led to a trial on the merits concerning the effect of Hermes's development on Appellees' property and on Appellees themselves. We have long recognized that a "private individual must both allege and prove special damages peculiar to himself in order to entitle him to maintain an action to enjoin violation of a zoning ordinance." *Culbertson I*, 2001 UT

108, ¶ 54, 44 P.3d 642; *see also* Young, *supra,* § 29.11. In other words, parties have standing to bring claims for injunctive relief only once they have alleged and proven special damages.

¶ 15 We have defined special damages in the context of zoning violations as damage "over and above the public injury which may be caused by the violation of the zoning ordinance." *Culbertson I*, 2001 UT 108, ¶ 54, 44 P.3d 642. The damages need only differ in kind or be substantially more than those of the general community. *See* Young, *supra,* § 29.11 n. 45. As the *only* landowners surrounded on three sides by Hermes's expansion, Appellees have obviously suffered a different and more substantial impact than any other landowners near the Family Center. The record unequivocally reflects the fact that Appellees are the only homeowners whose residential property is within feet of the Shopping Center and who have been affected, in kind, by Hermes's substandard roadway construction and non-compliance with applicable zoning ordinances. A review of the photographs and blueprint of the revised development plan, both of which are contained in the record, show the Croxford Property before and after the construction of the Shopping Center and leave no doubt that Appellees' injuries, resulting from the zoning violation, have been unique, profound, and dramatic. For instance, it is undisputed that Hermes failed to install, as ordered by the County, a highback curb, gutter, sidewalk, or landscaping on North Union Avenue. Because Appellees, whose property is the only residential lot abutting the disputed roadway on North Union Avenue, would have benefitted from Hermes's compliance with the county roadway ordinances, Appellees are thus damaged by Hermes's ultimate noncompliance. The above mentioned facts, alone, show that Appellees suffered injury dissimilar from that suffered by the public generally.[5] Thus, Appellees' damages easily rise

---

4. First, "courts are usually disposed to search out and discover at least some nominal property right upon which to base the granting of injunctive relief." 42 Am.Jur.2d *Injunctions* § 49 (2004); *see also Id.* § 33. Nevertheless, property rights are seldom defined in a narrow or technical sense because courts generally include "any right of a pecuniary or civil nature" under the

umbrella of property right. *Id.* § 49. In this particular case, neither Appellant nor Appellees contest the fact that Appellees have a vested interest in the quiet enjoyment and use of their property under both the traditional and modern definitions.

5. Our holding in *Harris v. Springville City*, 712 P.2d 188, 191 (Utah 1984), indicates that special

"over and above the public injury which may be caused by the violation of the zoning ordinance." *Young, supra,* nn. 44–45.

¶ 16 Hermes contends, however, that disputed facts about the number of access roads and the availability of county services should have been material to the district court's special damages analysis. We disagree. Appellees have met the necessary burden to establish special damages on the basis of facts not contested by Hermes.

## B. Irreparable Harm

¶ 17 Hermes also contends that Appellees never presented facts, undisputed or otherwise, of irreparable injuries and that absent such a showing, summary judgment was improper in this case. An injury must be irreparable to warrant injunctive relief. *See* 13 *Moore's Federal Practice* § 65.06[2] (3d ed.2005).

■ ¶ 18 "Irreparable harm," a term often interchanged with "irreparable injury," is defined as "a harm that a court would be unable to remedy even if the movant would prevail in the final adjudication." *Moore, supra,* § 65.06[2]. We have also explained that irreparable injury consists of "wrongs of a repeated and continuing character, or which occasion damages that are estimated only by conjecture, and not by any accurate standard." *Carrier v. Lindquist,* 2001 UT 105, ¶ 26, 37 P.3d 1112 (internal quotation marks omitted). A party proves irreparable injury when establishing that "he or she is unlikely to be made whole by an award of monetary damages or some other legal, as opposed to equitable, remedy.... Thus, an injury is irreparable if the damages are estimable only by conjecture and not by any accurate standard." 42 Am.Jur.2d *Injunctions* § 33 (2004); *see also Carrier,* 2001 UT 105, ¶ 26, 37 P.3d 1112. Nevertheless, we have held that in some cases the court need

not make an explicit finding of irreparable harm. *See Culbertson I,* 2001 UT 108, ¶ 54, 44 P.3d 642; *Utah County v. Baxter,* 635 P.2d 61, 64–65 (Utah 1981); 42 Am.Jur.2d *Injunctions* § 33 (2004). For instance, a *county* may obtain an injunction against a party in violation of a zoning ordinance because "a violation of a zoning ordinance is also a crime, a showing that the zoning ordinance has been violated is tantamount to irreparable injury ... to the public." *Culbertson I,* 2001 UT 108, ¶ 54, 44 P.3d 642 (internal quotation marks omitted) (citing *Baxter,* 635 P.2d at 64).

¶ 19 Appellees assert that our prior zoning violation cases establish that irreparable harm in the injunctive relief context may be based merely on a showing of (1) a zoning violation and (2) special damages.[6] We disagree. For individuals, proof of irreparable harm is necessary to obtain injunctive relief. In *Culbertson I,* we explicitly limited per se irreparable harm through zoning violations to those cases where counties seek the injunction, determining that when private individuals bring the suit, a zoning violation is only a "significant factor" in finding irreparable harm. *Id.* ¶ 55 n. 23. In other words, once a claim raised by a private individual proves a zoning violation, other, perhaps even lesser factors, may be enough to constitute the small remainder of the whole of irreparable harm.

■ ¶ 20 In the context of zoning violations, special damages and the violation itself do not equate to irreparable harm. Special damages show that a party has suffered peculiar damage, over and above that of the general community, which does not necessarily imply that the party was irreparably injured or that the violation makes the injury irreparable. Furthermore, irreparable harm and inadequate legal remedies are not synonymous.[7] Each is a separate and distinct,

damages need not be different than the general public but, at a minimum, more substantial than those suffered by the general public.

**6.** For instance, Appellees argue that *Harris v. Springville City,* 712 P.2d 188 (Utah 1984), equates a showing of special damages and a zoning violation to irreparable harm. This is an incorrect interpretation of *Harris,* which merely

held that special damages permitted a party to bring a case for injunctive relief under circumstances of zoning violations. *Id.* The only issue before us in that case was standing.

**7.** Because Utah case law does not distinguish between general injunctive relief and injunctive relief for zoning violations, we review irreparable harm in the context of adequate legal remedies.

equally essential, showing necessary for permanent injunctive relief. *See* 13 *Moore's Federal Practice* § 65.06[1]-[2] (3d ed. 2004). On appeal, Appellants raised irreparable harm and not the adequacy of legal remedies as the disputed factor. Thus, we specifically address irreparable harm but recognize that in some instances, it may be proper to address irreparable harm in light of the adequacy of legal remedies.[8]

¶ 21 Even so, the issue before us is whether the specific alleged injuries, resulting in inconveniences to Appellees, are legitimately disputed and material to the finding of irreparable harm. We review the allegedly disputed facts in light of Utah Rule of Civil Procedure 56(e), which explains:

> [W]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. Summary judgment, if appropriate, shall be entered against a party failing to file such a response.

Utah R. Civ. P. 56(e). Moreover, a party puts the legitimacy of a fact, supported by affidavits, depositions, or other sworn testimony, in dispute by presenting equally meaningful, sworn testimony in the form of affidavits, depositions, or interrogatories. *Id.* A generic denial is inadequate. Thus, we conclude that the following facts, contrary to Hermes's assertions, are not disputed because Hermes failed to contest them with specific sworn evidence as required under rule 56(e). *See Carrier,* 2001 UT 105, ¶ 26 n. 6, 37 P.3d 1112.

¶ 22 First, Appellees present by sworn evidence that at night, large overhanging floodlights located on the Family Center parking lots shine light inside the residences on the Croxford Property which prevents Appellees from sleeping. Hermes, in opposition, contends that additional discovery is needed to determine the extent of the disturbance and its impact on Appellees. This is inadequate as a defense to Appellees' factual assertion that floodlights disturb Appellees and prevent them from sleeping at night because Hermes failed to specifically address the factual statement from Appellees' affidavits. A request for additional discovery is not, under Utah Rule of Civil Procedure 56(c), a proper counter to factual assertions. Moreover, the proper means of requesting additional discovery would have been to file a motion for additional discovery rather than to use the request as a challenge to summary judgment.

¶ 23 Similarly, Appellees present sworn affidavit evidence that the loading dock and trash compacting facilities located at the Shopping Center are frequently used between 10:00 p.m. and 7:00 a.m., resulting in disruptions to Appellees' peaceful use and enjoyment of their property. Again, Hermes argues this fact is in dispute because neither the current level of noise nor the alleged resulting injuries have been adequately explored. However, Hermes's generic response to Appellees' claim fails to qualify as valid contesting evidence under rule 56(c) for the same reasons discussed above.

¶ 24 Third, Appellees present sworn affidavit evidence that vehicles traveling to the end of North Union Avenue in front of Plaintiffs' property must either back up or use their property and their driveways to turn around because the roadway dead-ends and does not have a cul-de-sac. Hermes, again, contests this fact with inadequate record evidence, claiming merely, based on deposition testimony from County Planner Ken Jones, who

---

Generally, the lack of adequate remedies at law may be demonstrated by showing that (1) "alternative legal remedies, while available in theory, are immeasurable or merely speculative," 13 *Moore's Federal Practice,* § 65.06[1] (3d ed.2005); (2) obtaining legal redress would require the commencement of multiple suits; or (3) "an awarding of damages by an alternative remedy may be insufficiently compensatory in light of the harm caused by defendant's conduct." *Id.*

8. For instance, inadequate legal remedies exist when "[a party] is unlikely to be made whole by an award of monetary damages or some other legal, as opposed to equitable, remedy.... Thus, an injury is irreparable if the damages are estimable only by conjecture and not by any accurate standard." 42 Am.Jur.2d *Injunctions* § 33 (2004).

worked with Hermes on the development project, that the "access provided to the Croxford Property was reasonable." Absent a direct counter to the claim of no cul-de-sac and no means of backing-up cars, the district court may consider, as noted in *Carrier*, those facts as undisputed. *See Carrier*, 2001 UT 105, ¶ 25 n. 6, 37 P.3d 1112.

¶ 25 Fourth, Appellees present sworn evidence that hook-and-ladder fire trucks and large sanitation trucks cannot access their property. Again, Hermes counters only with testimony that the fire department and sanitation services had "reasonable access." Hermes fails to expressly deny the claim that Appellees' property is inaccessible to hook-and-ladder fire and large sanitation trucks. Hermes's challenge to the lack of these services is insufficient. Furthermore, Hermes's challenge fails based as it is only on deposition testimony from the County Planner Ken Jones. His comments on these matters are hearsay because he is simply repeating out-of-court statements made to him and used by Hermes in an attempt to prove the truth of the matters asserted. *See* Utah R. Evid. 801. The record is devoid of authoritative first-hand statements from responsible persons in the fire and sanitation departments. *See* Utah R. Evid. 801–02. Thus, for purposes of the motion for summary judgment, it was undisputed that both hook-and-ladder fire trucks and large sanitation trucks are unable to access the Croxford Property. This evidence is material to Appellees' proof of irreparable harm because the zoning ordinances are, invariably, written to ensure citizens access to government services, including larger service vehicles intended to pass easily through roads of the size required by zoning ordinances.

¶ 26 The only validly disputed fact is the number of access roads to the Croxford Property.[9] However, after reviewing the undisputed material facts, we conclude the number of access roads is immaterial to the proof of irreparable harm suffered by Appellees. The other factors clearly outweigh this one, even if successfully disputed by Hermes, and tip the scale in Appellees' favor.

¶ 27 The district court correctly found that the undisputed facts relating to diminished availability of services and the disturbing light and noise in this case, when added to the already-determined "significant factor" of a zoning violation, establish irreparable harm sufficient for purposes of granting a permanent injunction. Accordingly, we affirm the district court's finding of irreparable harm. Because we affirm the district court's finding of both special damages and irreparable harm, we affirm its grant of partial summary judgment.

## II. THE SPECIFIC FEATURES OF THE DISTRICT COURT'S INJUNCTION

■■■ ¶ 28 We next review the specific features of the district court's injunction.[10] Hermes contends that the district court, in awarding mandatory injunctive relief to Appellees, imposed specific metes and bounds contrary to the ordinances in effect at the time of the zoning violation, and that are also contrary to logic and reason. When considering the district court's choice of remedy, we review the court's actions under an abuse of discretion standard. *See Thurston v. Box Elder County*, 892 P.2d 1034, 1041 (Utah 1995). We hold that the district court did

9. Appellees assert that the sole means of access to their Property is by way of 1070 East and North Union Avenue. Hermes counters with the assertion that Appellees also have access to their property through 7240 South. Because both arguments are supported by affidavits or depositions, the number of access roads to the Croxford Property is in dispute. We conclude, however, that it is immaterial in light of the other weighty factors demonstrating irreparable harm.

10. The district court's order, signed May 14, 2004, required Hermes to (1) remove, at its own expense, the portions of buildings that were unlawfully constructed adjacent to the Croxford Property in violation of the conditional use permit; (2) reconfigure the roadways and rights-of-ways abutting the Croxford Property to meet feature requirements (landscape, gutter, sidewalks); (3) reconfigure and reconstruct, at its own expense, portions of 1070 East Street and North Union Avenue abutting the Croxford Property; (4) submit a detailed written plan to the court within thirty days of the order, and (5) proceed as expeditiously as possible with respect to applying for and receiving all necessary permits and approvals from Midvale City and any other government authorities.

not abuse its discretion in imposing specific metes and bounds on Hermes because, as preliminarily addressed in *Culbertson I*, we explicitly provided the district court with the "latitude in fashioning an appropriate remedy." 2001 UT 108, ¶ 57, 44 P.3d 642. The district court's order to restore the property falls within the scope of this authority.

¶ 29 We explained in *Culbertson I* that an "appropriate remedy" takes into account the unequivocal and uncontested fact, based on the record, that Hermes acted "willfully and deliberately when it constructed its building *after* plaintiffs put both Hermes and the County on notice that the proposed construction would violate county ordinances." *Id.* ¶ 56 (emphasis added). We relied, in part, on our reasoning in *Papanikolas Brothers Enterprises v. Sugarhouse Shopping Center Associates,* where we held that "where encroachment is deliberate and constitutes a willful and intentional taking of another's land, equity may require its restoration." 535 P.2d 1256, 1259 (Utah 1975). Moreover, our *Culbertson I* opinion held that Hermes clearly violated the County zoning ordinance. 2001 UT 108, ¶ 56, 44 P.3d 642. Although Hermes fiercely denies a willful and intentional violation and reiterated in oral arguments that it only acted in good faith, our previous determinations have reached the opposite conclusion. We stated in *Culbertson I* that "[b]ecause the segment of North Union Avenue [that] bordered the Croxford Property [was] a public street, the County must comply with the [conditional use permit] and all other county zoning and roadway ordinances" and that to be in noncompliance would be a violation of the conditional use permit and zoning and roadway ordinances. *Culbertson I,* 2001 UT 108, ¶ 43, 44 P.3d 642. We then held that the exceptions to the roadway standards were erroneously granted, which, consequently, placed Hermes in noncompliance and resulted in an ordinance violation.[11] *Id.* ¶ 49.

¶ 30 The district court clearly acted within its permitted discretion in determining that due to Hermes's willful and intentional violation of the zoning ordinance, a com-plete restoration of the property to its pre-encroachment status is appropriate. Because complete restoration requires removing portions of Hermes's constructed buildings, the district court did not act outside its discretion by ordering Hermes, at its expense, to remove portions of the buildings that it unlawfully constructed and to reconfigure the roadways and rights-of-way abutting Appellees' property, nor by requiring similar restoration of 1070 East Street and North Union Avenue. The court also fittingly ordered the submission of both plans within thirty days of the judgment. For the above reasons, the specific metes and bounds, which constitute the restoration as set forth in the court's order, are within the district court's "latitude in fashioning an appropriate remedy." *Culbertson I,* 2001 UT 108, ¶ 57, 44 P.3d 642.

## III. THE DISTRICT COURT DID NOT EXCEED ITS DISCRETION IN DECLINING TO APPLY THE "BALANCE OF HARDSHIPS" DOCTRINE

¶ 31 Finally, Hermes argues that the district court should have balanced the equities, which requires a balancing of the opposing parties' interests. Under this test, Hermes argues that its interest in retaining the already constructed Family Center extensions far exceeds the Appellees' interests in restoring the Croxford Property. We review the district court's refusal to apply a balance of equities test for abuse of discretion. *See Carrier v. Lindquist,* 2001 UT 105, ¶ 29, 37 P.3d 1112 (citing *Papanikolas Bros. Enters. v. Sugarhouse Shopping Ctr. Assocs.,* 535 P.2d 1256, 1259 (Utah 1975)).

¶ 32 While common law generally requires a balancing of the parties' equitable interests before awarding permanent injunctive relief, an exception is made when a defendant's encroachment is willful and intentional. *See* 1 Am.Jur.2d *Adjoining Landowners* § 133 (2004). We have already determined that the same exception applies to willful and intentional zoning violations. *See Culbertson I,* 2001 UT 108, ¶ 56, 44 P.3d 642;

11. A more detailed analysis of the conditional use permit and county and roadway ordinances is found in *Culbertson I,* 2001 UT 108, ¶¶ 35–49, 44 P.3d 642.

*Carrier,* 2001 UT 105, ¶ 31, 37 P.3d 1112. This precedent is based on the doctrine that balancing the equities " 'is reserved for the innocent defendant, who proceeds without knowledge or warning that he is encroaching upon another's property rights.' " *Carrier,* 2001 UT 105, ¶ 31, 37 P.3d 1112 (quoting *Papanikolas Bros. Enters.,* 535 P.2d at 1259). But if the defendant is not innocent, "equity may require [the property's] restoration, without regard for the relative inconveniences or hardships which may result from its removal." *Id.* In this case, it is undisputed that Hermes did not innocently impede Appellees' property rights. *See Culbertson I,* 2001 UT 108, ¶ 56, 44 P.3d 642. Hermes admits it had actual and repeated notification from Appellees that Appellees believed Hermes to be infringing on their property rights.

¶ 33 The case law in Utah is clear: when a zoning violation is deliberate and willful, as we held Hermes to be in *Culbertson I,* the trial court may, as a matter of equity, restore the property without balancing the hardships. *Id.* Consequently, the district court did not exceed its permitted discretion by granting a mandatory injunction without first weighing the parties' relative hardships and interests.

## CONCLUSION

¶ 34 The district court did not err in granting summary judgment. Appellees clearly established the necessary standing by demonstrating special damages. The zoning violation by Hermes and the undisputed, material facts demonstrate Appellees' irreparable harm. Accordingly, we affirm the district court's order, including the imposition of specific metes and bounds to accomplish the restoration of the Croxford Property. We also affirm the district court's decision not to balance the parties' equities and hold that the court did not exceed its permitted discretion in this choice, but rather, correctly interpreted Utah law to mean that parties who deliberately and intentionally violate zoning laws are not entitled to a balance of equities in the injunctive relief analysis. Affirmed.

¶ 35 Chief Justice DURHAM, Justice NEHRING, Judge MEMMOTT, and Judge STOTT concur in Associate Chief Justice WILKINS' opinion.

¶ 36 Having disqualified themselves, Justice DURRANT and Justice PARRISH do not participate herein; District Judge JON M. MEMMOTT and District Judge GARY D. STOTT sat.