*This opinion is subject to revision before final publication in the Pacific Reporter*

**2026 UT 1**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

BRUCE VAN DUSEN, BRUCE QUADE, SHAWN SAVARINO, and
DOMINIC SAVARINO,
*Appellants and Cross-appellees,*

*v.*

WASATCH COUNTY,
*Appellee and Cross-appellant,*

and

THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS
*Appellee.*

No. 20250860
Heard December 8, 2025
Filed February 5, 2026

On Direct Appeal

Fourth District Court, Wasatch County
The Honorable Jennifer A. Mabey
No. 230500146

Attorneys:

Robert E. Mansfield, Megan E. Garrett, Michael W. Combs,
Salt Lake City, for appellants and cross-appellees

Scott H. Sweat, Jonathan B. Woodward, Heber City,
for appellee and cross-appellant

David J. Jordan, David L. Mortensen, Tanner B. Camp,
Justin W. Starr, Christopher A. Bates, Salt Lake City, for appellee

JUSTICE PETERSEN authored the opinion of the Court, in which
JUSTICE HAGEN, JUSTICE NIELSEN, JUDGE MORTENSEN, and
JUDGE NEIDER joined.

Having recused themselves, CHIEF JUSTICE DURRANT and ASSOCIATE CHIEF JUSTICE POHLMAN do not participate herein; COURT OF APPEALS JUDGE DAVID N. MORTENSEN and DISTRICT COURT JUDGE CAMILLE L. NEIDER sat.

---

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1    The Church of Jesus Christ of Latter-day Saints announced plans to build an 88,000 square-foot temple in Heber Valley, Utah. Wasatch County approved the project. But a group of nearby residents (Petitioners) sued, alleging that the project violated local land-use regulations and state law. The district court rejected those claims and dismissed the Petitioners' case. And they appealed.

¶2    Shortly after prevailing in the district court, the Church began construction on the temple. Upon learning of this, Petitioners moved the district court to stop the Church from building while their appeal was pending. They argued that they would suffer irreparable harm if the Church continued to build but then lost on appeal. The district court agreed and granted the injunction, thereby halting construction during the appellate process.

¶3    The Church wants to begin building the temple immediately. Accordingly, it has appealed the district court's order, and it moves this court to vacate the district court's injunction under Utah Rule of Appellate Procedure 8. It acknowledges that if the injunction is lifted and it resumes construction, it is taking the risk that it may lose on appeal and, as a result, may incur both the cost of construction and the cost of restoring the site to its prior condition. However, it states that it is willing to take that risk.

¶4    In this scenario, Petitioners have not identified what irreparable harm the construction would cause. For this reason, we grant the Church's motion and suspend the injunction pending resolution of the appeal.

## BACKGROUND

¶5    The Church announced plans to build a temple in Heber Valley. Wasatch County adopted Ordinance 23-16, approving a legislative development agreement for construction of the project. The agreement authorized construction of an approximately 88,000 square-foot temple reaching 200 feet in height; an approximately

2,000 square-foot maintenance building; and related parking, landscaping, and improvements on an 18-acre site.

¶6    The Petitioners—property owners who live near the proposed temple site—feared that the project would directly and adversely impact their health, welfare, privacy, and quiet use and enjoyment of their property. They sued the County to stop the temple from being built. In their complaint, Petitioners alleged that Wasatch County's adoption of the Ordinance failed to comply with its preexisting land-use regulations, the Wasatch County Code, and state law. And they sought a declaration that the Ordinance was "invalid, unenforceable, void, and of no force and effect," and requested that it be "reversed and set aside." They also made a claim for injunctive relief to stop construction of the temple.

¶7    The Church intervened in the case. And the Church and the County later moved for summary judgment. Petitioners opposed the motion and filed their own cross-motion for summary judgment.

¶8    The district court granted summary judgment to the Church in full and to the County in part. And it denied Petitioners' cross-motion. The court concluded that Petitioners had failed to show that the Ordinance was "preempted or contrary to state or federal law." It also held that Petitioners failed to "overcome the highly deferential standard of review" governing whether land use actions are consistent with the County Land Use, Development, and Management Act. The court dismissed the case. And Petitioners appealed.

¶9    Soon thereafter, the Church began building the temple. In response, Petitioners moved under Utah Rule of Civil Procedure 62 to stop the construction pending their appeal. The district court concluded that Petitioners were asking for an injunction under rule 62(c), and it treated their motion accordingly. Ultimately, it granted the motion and enjoined the Church from construction activities during the pendency of Petitioners' appeal.

¶10   In its oral ruling, the court noted that both parties had assumed the standards applicable to preliminary injunctions also governed injunctions pending appeal. So the court adopted that approach and analyzed whether: "(1) there [was] a substantial likelihood that the applicant [would] prevail on the merits of the underlying claim; (2) the applicant [would] suffer irreparable harm unless the order or injunction issue[d]; (3) the threatened injury to the applicant outweigh[ed] whatever damage the proposed order

or injunction may cause the party restrained or enjoined; and (4) the order or injunction, if issued, would not be adverse to the public interest." UTAH R. CIV. P. 65A(f).

¶11 The court applied a "sliding scale" approach to the factors, concluding that the moving party must satisfy all four, though not in equal measure. Under that framework, the court explained that the weight assigned to each of the factors "may vary depending upon the circumstances." The court began its analysis with irreparable harm.

¶12 The court asked whether allowing construction to proceed during appeal would cause Petitioners irreparable harm if the Church ultimately lost. It concluded that it would, reasoning that Petitioners would suffer irreparable harm by being forced to endure construction activity only for that activity to later be deemed unlawful or invalid. The court therefore found that this factor weighed in Petitioners' favor.

¶13 The court next balanced the threat of this harm against the harm the Church asserted it would suffer if an injunction issued. The Church identified increased construction costs as its primary harm if it were required to wait until the end of the appeals process before breaking ground. The court reasoned that, "by their very nature," irreparable injuries outweigh monetary damages and therefore concluded that this factor, too, weighed in Petitioners' favor.

¶14 Turning to the public-interest factor, the court acknowledged that many Church members were eager to visit a temple in Wasatch County. At the same time, the court identified a strong public interest in "ensuring that land use decisions are made in compliance with applicable law." The court further reasoned that "it is in the public interest, as a whole, to have finality in the legal decision determining whether the construction of the temple fits that criteria." Pending that final determination on appeal, the court held that an injunction maintaining the status quo would be in the public interest. The court defined the status quo as "the last uncontested status between the parties which preceded the controversy"—here, "the vacant land upon which the [Church] seeks to build."

¶15 With respect to the final factor—Petitioners' likelihood of success on the merits—the court acknowledged that it had already ruled against Petitioners on the merits. The court reaffirmed its belief that its prior ruling was "correct in light of the undisputed

facts in this matter and the controlling caselaw." But the court also reiterated its "sliding scale" approach to the injunction factors, explaining that a weaker showing on one factor may suffice when the remaining factors strongly favor relief.

¶16 The district court concluded that the equities weighed "heavily in favor of the injunction." Because those factors strongly favored relief, the court held that, as to the likelihood of success on the merits, it was "sufficient that the petitioners have raised questions going to the merits that are sufficiently serious and substantial that they are fair ground for continued litigation." The court also emphasized that its underlying merits decision would be reviewed de novo on appeal. For these reasons, the court concluded that the likelihood-of-success factor likewise favored granting the injunction.

¶17 Having granted the injunction, the court next addressed whether a bond or other security was required. The Church presented evidence that if construction were delayed by 12 to 18 months, it would cost the Church between $7.8 to $11.4 million in increased construction costs. The court rejected this amount as too high. Instead, it ordered Petitioners to post a $10,000 bond to compensate the Church for its potential costs and attorney fees on appeal, in the event it prevailed.

¶18 The Church appealed the district court's rule 62(c) ruling. Simultaneously, it moved this court under Utah Rule of Appellate Procedure 8 to suspend[1] the district court's injunction.

**STANDARD OF REVIEW**

¶19 The merits of the underlying appeal are not before us here; we consider only the injunction. The Church pursues two different avenues of relief. First, it has appealed the district court's injunctive order and asks us to reverse it. We review a district court's decision under rule 62(c) for an abuse of discretion. UTAH R. CIV. P. 62(c) ("[T]he court *in its discretion* may suspend, modify, restore, or grant an injunction during the pendency of appellate proceedings upon such conditions for the security of the rights of the adverse party as

---

[1] The Church has styled its motion as a "Motion to Vacate," under Utah Rule of Appellate Procedure 8(a)(1)(B). However, the rule does not include the word "vacate," so we construe the Church's motion as a motion to "suspend" the district court's injunction. The practical result is the same.

are just." (emphasis added)). However, we review any underlying legal issues for correctness. *Jenco, LC v. Valderra Land Holdings, LLC*, 2025 UT 20, ¶ 15 n.7, 572 P.3d 381 ("Because misapplication of the law constitutes an abuse of discretion, correctness is the appropriate standard of review." (cleaned up)). Second, the Church has moved this court under Utah Rule of Appellate Procedure 8 for an order suspending the injunction. Such a motion asks us to exercise our own discretion in the first instance. Thus, no standard of review applies.

## ANALYSIS

¶20  We may proceed either by addressing the Church's appeal of the district court's rule 62(c) injunctive order, or by resolving the Church's rule 8 motion. We elect to resolve the rule 8 motion. Although we decide in the first instance whether to grant relief under rule 8, we consider the district court's order and its reasoning because the Church asks us to suspend that order. Ultimately, we conclude that an injunction is not warranted under the circumstances here, and we suspend the injunction.

¶21 Under rule 8, "A party may move the appellate court for . . . an order suspending, modifying, restoring, or granting injunctive relief." UTAH R. APP. P. 8(a)(1)(B). However, before seeking such relief, "a party must first seek the requested relief in the trial court unless the party can show extraordinary circumstances or that the trial court has already rejected the basis for the requested relief." *Id.* R. 8(a)(2). If the movant has done so, it must include, "as applicable, the reason the trial court denied the requested relief, [or] the reason the trial court denied the basis for the requested relief." *Id.* R. 8(b)(2). If the appellate court decides to grant the requested relief, it:

> may waive the requirement for a bond or other security if the movant demonstrates:
>
> (A) a substantial likelihood of prevailing on appeal;
>
> (B) the movant will suffer irreparable harm without the injunction;
>
> (C) the irreparable harm to the movant outweighs whatever harm the injunction may cause the party enjoined; and
>
> (D) the injunction is not adverse to the public interest.

*Id.* R. 8(c)(3).

¶22   Thus, in deciding whether to grant the Church's motion, we first consider whether it sought the requested relief in the trial court as rule 8(a)(2) requires. In this case, it was the Petitioners who initially sought relief in the trial court. And it was the Church who opposed it. But we conclude that by opposing Petitioners' motion in the trial court, the Church satisfied rule 8(a)(2)'s requirement that the requested relief first be sought there. Although the Church was not the movant in the trial court, it sought from that court the same relief it requests from us—that no injunction issue. Accordingly, we conclude that the Church has satisfied rule 8(a)(2).

¶23   Next, the movant must provide "the reason the trial court denied the requested relief." *Id.* R. 8(b)(2). This requirement does not reflect a standard-of-review framework; our decision on a rule 8 motion is not conditioned on affirming or reversing the district court's order. But a rule 8 movant must persuade us that we should reach a different result than did the district court. And to do that, we need to know why the district court denied the relief the movant seeks from us.

¶24   In the district court, the Petitioners asserted that an injunction pending appeal was necessary because otherwise, they would suffer irreparable harm. They presumed that the preliminary injunction factors outlined in Utah Rule of Civil Procedure 65A applied to their request under rule 62. Accordingly, they argued that: (1) there was a substantial likelihood they would prevail on appeal; (2) they would suffer irreparable harm unless the injunction issued; (3) the threatened injury to Petitioners outweighed whatever damage the proposed injunction may cause the Church; and (4) the injunction, if issued, would not be adverse to the public interest. *See* UTAH R. CIV. P. 65A(f).

¶25   Addressing the parties' arguments under this framework, the district court ultimately concluded that Petitioners would suffer irreparable harm if the Church commenced construction and then lost on appeal.

¶26   In addressing Petitioners' motion to us, both parties assume that our determination of whether to grant or modify injunctive relief under rule 8 is governed by the preliminary injunction standard outlined in rule 65A. But rule 8 does not say that. Instead, it directs us to consider those factors only when deciding whether to waive any bond requirement. However, neither party has addressed the language of rule 8.

¶27 That said, in deciding how to exercise our discretion under rule 8, we consider the record and arguments presented to us. And importantly, the reason the district court granted injunctive relief to the Petitioners was to prevent what it deemed to be irreparable harm. The primary question before us, then, is whether we agree in substance with the district court's assessment. Because we conclude that Petitioners have not identified any specific irreparable harm that may occur absent an injunction pending appeal, we grant the Church's motion and suspend the injunction.

¶28 Irreparable harm exists when a party's injury cannot be remedied by monetary damages or other legal relief, even if that party ultimately prevails on the merits. *See Johnson v. Hermes Assocs.*, 2005 UT 82, ¶ 18, 128 P.3d 1151. To establish irreparable harm, a party must show that it is unlikely to be made whole by an award of monetary damages or other legal remedy. *See id.* Put differently, irreparable harm typically refers to an injury which "cannot be adequately compensated in damages." *Carrier v. Lindquist*, 2001 UT 105, ¶ 26, 37 P.3d 1112 (cleaned up).

¶29 The district court found that the Petitioners would suffer irreparable harm "if construction on the temple is allowed to proceed, and then later it was determined to be unlawful" on appeal. But the court did not provide further specifics.

¶30 In their briefing before us, Petitioners have expanded on the harm they would suffer if the Church began constructing the temple and then lost on appeal. Petitioners assert that, because they live near the temple, they "would immediately suffer harms of loss of privacy, noise and light pollution, and other detrimental impacts." However, they do not explain how those harms would arise from the commencement of construction, as opposed to the operation of a fully constructed temple.

¶31 Petitioners also assert, in broad terms, that construction will cause environmental harm. Utah caselaw has, at times, recognized environmental damage as irreparable. For example, in *Hunsaker v. Kersch*, we explained: "Trees, in particular, might take many years to replace. Loss of agricultural, ornamental, and shade value could be fundamentally irreparable." 1999 UT 106, ¶ 10, 991 P.2d 67. But Petitioners offer no factual basis to support such a claim here. They do not describe the lot, the surrounding land, or the local ecology. Nor do they allege that construction would destroy any unique environmental feature—such as ornamental or shade value—or pose environmental threats

incapable of remediation through compensatory damages. *See, e.g.,* *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1261 (10th Cir. 2003) (holding that plaintiffs demonstrated irreparable injury where development threatened the death of bald eagles and destruction of their breeding habitat).

¶32 Finally, Petitioners refer to a "Staff Report" in the record, which states that the temple would create traffic that is significantly higher than a typical residential development. But this potential harm also seems to flow from people visiting a completed temple, not necessarily from the initial construction process.

¶33 For its part, the Church explained at oral argument that it recognizes that, by beginning construction before the appeal is final, it is assuming the risk that it could lose on appeal. In that scenario, the Church understands that it may well lose what it spent on construction and bear the cost of restoring the site to its previous condition.

¶34 We acknowledge that such an eventuality may cause inconvenience for Petitioners and that the land, which is now vacant, would be changed. But Petitioners have not explained how, if they prevail on appeal and the construction is halted, they will have been irreparably harmed in the interim.

¶35 Without that, we are persuaded that the injunction in this case should be suspended.

## CONCLUSION

¶36 For these reasons, we grant the Church's motion under rule 8 and suspend the injunction pending the appeal of this matter.