FILED
**United States Court of Appeals**
**Tenth Circuit**

**February 21, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ASPHALT TRADER LIMITED,

    Plaintiff - Appellant,

v.

ROBERT SCOTT BEALL; TARYN
CAPITAL ENERGY, L.L.C.,

    Defendants - Appellees.

No. 22-4085
(D.C. No. 1:17-CV-00015-HCN)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

After an international petroleum-shipping deal fell apart, the aggrieved

ship owner, Asphalt Trader Limited, recovered a large arbitration award against

the ship charterer, Taryn Capital Energy, L.L.C. To collect on its award,

Asphalt sued Taryn Capital and its sole member, Robert Scott Beall, in federal

district court in Utah, asserting that Beall had siphoned Taryn Capital's assets

and fraudulently kept Asphalt from a recovery. In that suit, Asphalt also sought

to pierce the LLC veil between Taryn Capital and Beall and hold Beall

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

personally liable for the judgment. The district court granted summary judgment against Asphalt on its alter-ego claim. After a bench trial on the sole remaining claim for fraudulent transfers, the court entered judgment for Taryn Capital and Beall.

Asphalt appeals the court's alter-ego ruling, raising for the first time legal arguments about equity and the election of remedies. But because Asphalt does not overcome the district court's reasoning, we affirm.

## BACKGROUND

### I.     Factual Background

In 2012, Taryn Capital contracted to charter Asphalt's tanker ship, the *Asphalt Trader*, to load 69,000 barrels of fuel oil in Venezuela and transport that oil to Panama. Taryn Capital separately contracted with another company, Cinque Terre Financial Group, Ltd., to carry out Taryn Capital's contractual obligations in Venezuela—to be a sub-charterer. Under this arrangement, Taryn Capital would be the middleman between Asphalt and Cinque Terre; Cinque Terre would pay Taryn Capital $849,000, and Taryn Capital would pay Asphalt $725,000. This approach was consistent with Asphalt's and Taryn Capital's previous dealings, with Taryn Capital having served as a middleman nine times.

But when the *Asphalt Trader* docked in Venezuela, the Venezuelan government disallowed Cinque Terre from loading the ship. Faced with no other option, the *Asphalt Trader* left Venezuela without the oil, causing

2

cascading contract breaches; neither Cinque Terre nor Taryn Capital paid on their contracts.

In the international arbitration proceeding that Asphalt brought in London, England, the arbitrators awarded Asphalt about $2 million against Taryn Capital. And the arbitrators awarded Taryn Capital a like amount against Cinque Terre.[1] Asphalt then petitioned to domesticate its arbitration award in Utah, Taryn Capital's home state. Taryn Capital never responded to the petition, and in late 2016 the federal district court confirmed the award and entered judgment against Taryn Capital. *Asphalt Trader Ltd. v. Taryn Cap. Energy, L.L.C.*, No. 1:16-CV-00054, 2016 WL 5400389 (D. Utah Sept. 27, 2016); *Asphalt Trader Ltd. v. Taryn Cap. Energy, L.L.C.*, No. 1:16-CV-00054, 2016 WL 7017261 (D. Utah Dec. 1, 2016). With a federal judgment in hand, Asphalt prepared to collect.

Beall formed Taryn Capital under Utah law in 2006 with a $1,000 capital contribution. As the sole member, Beall managed Taryn Capital's affairs, which included marketing petroleum products.[2] Taryn Capital's operating agreement allowed Beall to advance funds to the LLC; those funds would be treated as

---

[1] Despite Taryn Capital reducing its arbitration award to judgment, Cinque Terre later filed for Chapter 15 bankruptcy, so Taryn Capital ultimately couldn't collect on its offsetting judgment.

[2] Members of an LLC have limited liability as if they were shareholders, Utah Code Ann. § 48-3a-304(1) (2023), are treated as partners of a partnership for tax purposes, *id.* §§ 59-10-1402(11)(a), 59-10-1403(1), and are tasked with the "management and conduct" of the LLC, *id.* § 48-3a-407(2)(a).

personal loans by default. From the start, Beall regularly deposited his separate income into two Taryn Capital bank accounts and paid his personal expenses from those accounts. After the 2012 *Asphalt Trader* debacle in Venezuela, Taryn Capital conducted no more business. From 2012 to 2016, Taryn Capital's accounts steadily diminished from $778,000 and $11,000 balances to almost zero.

## II. Procedural Background

In January 2017, after realizing that Taryn Capital could not satisfy the judgment, Asphalt sued Beall and Taryn Capital. Asphalt asserted (1) an alter-ego claim to pierce the LLC veil between Beall and Taryn Capital; (2) a claim that Taryn Capital had made improper LLC distributions to Beall; (3) a claim under the Utah Uniform Fraudulent Transfer Act (UFTA), Utah Code Ann. §§ 25-6-1 to 25-6-14 (2016), to avoid fraudulent transfers from Taryn Capital to Beall; and (4) a request to freeze Beall's assets during the litigation.[3]

The district court granted partial judgment on the pleadings for Beall on Asphalt's improper-distribution claim. *Asphalt Trader Ltd. v. Beall*, No. 1:17-CV-00015, 2018 WL 11450168, at *5 (D. Utah July 30, 2018). Later, the court construed the asset-freeze claim not as a standalone claim but as a requested

---

[3] Utah amended its fraudulent-transfer statutes in 2017, but those amendments do not apply retroactively to transfers occurring before May 9, 2017. *See* Utah Code Ann. § 25-6-406. Like the district court, we apply the pre-2017 version of the statute. All subsequent citations to title 25 are to the 2016 statute.

remedy belonging in Asphalt's prayer for relief. Thus, the alter-ego and fraudulent-transfer claims remained.

The parties moved and cross-moved for summary judgment on both claims. Beall and Taryn Capital argued that they were entitled to summary judgment on the alter-ego claim because Asphalt had failed to plead and to show that it lacked an adequate remedy at law—an essential element of the claim. Beall and Taryn Capital claimed that "there are no facts pled in Asphalt's Complaint which demonstrate that it lacks an adequate remedy at law." App. vol. 3, at 675. They also argued that Asphalt's complaint showed it had a legal remedy, the fraudulent-transfer claim.

In response, Asphalt did not contest that Utah law imposes a pleading requirement. Nor did Asphalt identify any facts in the record showing where it had argued that it lacked a legal remedy. Asphalt also did not request to amend its complaint to include this element. Instead of challenging Beall and Taryn Capital's argument, Asphalt asserted that alter-ego and fraudulent-transfer claims are not mutually exclusive.

The district court issued a lengthy oral ruling denying Asphalt's motion and partially granting Beall's and Taryn Capital's motion. Beginning with the fraudulent-transfer claim, the court discussed the two UFTA provisions at play: the insider-transfer provision and the actual-fraud provision. Utah Code Ann. §§ 25-6-6(2), 25-6-5(1)(a). Analyzing each provision separately, the court granted summary judgment for Beall on Asphalt's insider-transfer theory and

5

denied summary judgment on Asphalt's actual-fraud theory. For the insider-transfer theory, the court held that Asphalt's claims were untimely and that the transfers were made in the "ordinary course of business"—a defense to an insider-transfer claim. *Id.* § 25-6-9(6)(b). For the actual-fraud theory, the court discussed the eleven badges of fraud from § 25-6-5(2) and held that a reasonable factfinder could find for either party.

The district court then turned to Asphalt's alter-ego claim—the claim now before us. Relying mainly on *M.J. v. Wisan*, 371 P.3d 21 (Utah 2016), the court granted summary judgment for Beall and Taryn Capital, reasoning that an equitable veil-piercing remedy was unavailable because Asphalt had "failed to establish that it lacks access to an adequate remedy of law." App. vol. 6, at 1301–02. The court cited *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), in stating that Asphalt's UFTA claim "appear[s] to be legal in character." App. vol. 6, at 1302. The court noted that two of Asphalt's cited cases (1) were Utah Court of Appeals cases and not Utah Supreme Court cases, (2) predated *M.J.*, (3) did not address a plaintiff's duty to show the lack of an adequate remedy at law, and (4) did not implicitly hold that alter-ego claims could coexist with claims affording adequate remedies at law. All told, the court concluded that because Asphalt hadn't shown how its UFTA claims were legally inadequate, the court didn't need to pierce the LLC veil "to avoid an injustice in this case." *Id.* at 1304. One effect of that ruling was that the court

6

would avoid "decid[ing] the difficult question" of whether Utah would even recognize a veil-piercing claim against an LLC. *Id.*

With Asphalt's complaint winnowed to a single UFTA actual-fraud claim, the case proceeded to a bench trial. In its findings of fact and conclusions of law, the district court weighed the UFTA badges of fraud and concluded that Asphalt had failed to "prove by clear and convincing evidence that Defendants acted with actual intent to hinder, delay, or defraud." *Asphalt Trader Ltd. v. Beall*, No. 1:17-CV-00015, 2022 WL 3138215, at *16 (D. Utah Aug. 5, 2022). The court entered judgment for Beall and Taryn Capital by separate order, and Asphalt timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review summary-judgment grants de novo and apply the same standard that applied in the district court. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019) (citation omitted). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And disputes about material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the movant satisfies its initial Rule 56 burden, the burden then shifts to

7

the nonmovant to identify "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (cleaned up).

This case involves a grant of partial summary judgment with a later bench trial. Only the summary-judgment ruling is before us. When reviewing partial summary-judgment grants—which are not immediately appealable, Fed. R. Civ. P. 54(b)—we consider only the "summary judgment record before the district court when the motion was decided," *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016) (quoting *W. Coast Life Ins. Co. v. Hoar*, 558 F.3d 1151, 1157 (10th Cir. 2009)). We do not examine "the evidence offered subsequently at the trial []or the verdict." *United States v. Hardage*, 982 F.2d 1436, 1444 (10th Cir. 1992) (citation omitted).[4] Relatedly, this rule also bars the nonmovant from using trial evidence to retroactively create genuine issues of

---

[4] Beall and Taryn Capital posit that the district court's trial findings can cure any errors in the summary-judgment decision. But they have offered no authority to support this view. At trial, the parties rightly believed that the alter-ego claim was off the table, so Asphalt had no incentive to offer evidence that could support that claim. Affirming based on the trial findings could, among other things, violate due process. As Asphalt notes, we have used trial evidence to affirm a summary-judgment grant in only unique circumstances—when claims have completely overlapped facts. *See Sanpete Water Conservancy Dist. v. Carbon Water Conservancy Dist.*, 226 F.3d 1170, 1177 (10th Cir. 2000) ("We cannot imagine a piece of evidence necessary for Sanpete to prove its breach of contract case that was not ultimately presented at trial.").

8

material fact. *Id.* But we always draw all reasonable inferences from the record

in the nonmovant's favor. *Banner Bank*, 916 F.3d at 1326.[5]

## DISCUSSION

This appeal presents a single issue: whether the district court erred in

granting summary judgment on Asphalt's alter-ego claim. Utah employs a two-

part test for alter-ego claims:

> (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.

*Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979)

(citations omitted).[6] The first part is the "formalities requirement," and the

---

[5] Asphalt had cross-moved for summary judgment on the same issue for which it seeks review here, but because the district court not only denied Asphalt's motion, but also *granted* Beall's and Taryn Capital's motion, we make inferences in Asphalt's favor. *See Allen v. Sybase, Inc.*, 468 F.3d 642, 649 (10th Cir. 2006). Asphalt has not appealed the denial of its own motion, which would have required us to analyze the motions separately. *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018).

[6] Utah has not yet decided whether a claimant can pierce an LLC veil with an alter-ego claim. *See* Utah Code Ann. § 48-3a-304(2) (2023) ("The failure of a limited liability company to observe formalities . . . is not a ground for imposing liability on a member or manager . . . ."). We assume without deciding that Utah recognizes alter-ego claims against LLCs. *See Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 948 (10th Cir. 2018) ("[W]e are generally reticent to expand state law without clear guidance from the state's highest court for it is not a federal court's place to expand state law . . . ." (cleaned up)). Thus, we draw from Utah's law on alter-ego claims to pierce the corporate veil.

second part is the "fairness requirement." *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 635 (Utah 2012) (cleaned up).

Under the formalities requirement, courts analyze seven nonexclusive factors:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; [and] (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders.

*Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987) (cleaned up); *see also Jones & Trevor Mktg.*, 284 P.3d at 636 ("We adopt the *Colman* factors as useful considerations to aid courts in determining whether to pierce the corporate veil.").[7]

The fairness requirement, in turn, considers "the availability of an adequate remedy at law to prevent irreparable harm to the plaintiff . . . and the potential for adverse impacts on third parties." *M.J.*, 371 P.3d at 35 (cleaned up). Because an alter-ego claim is equitable, a plaintiff "must establish . . . that [veil] piercing is necessary to avoid an injustice (or in other words that the [plaintiff] lacks an adequate remedy at law)." *Id.* at 36. Lacking an adequate remedy at law is necessary because Utah "counsels 'great caution' before

---

[7] In *Jones & Trevor Marketing*, the Utah Supreme Court rendered superfluous an eighth *Colman* factor—whether the corporate form was used to promote injustice or fraud—because it was "essentially identical" to *Norman*'s fairness requirement. 284 P.3d at 637.

allowing a claimant to pierce the corporate veil." *Id.* at 35 (citation omitted). To state an equitable claim, Utah requires plaintiffs to "affirmatively show a lack of an adequate remedy at law on the face of the pleading." *Thorpe v. Washington City*, 243 P.3d 500, 507 (Utah Ct. App. 2010) (citing *Ockey v. Lehmer*, 189 P.3d 51, 61 n.42 (Utah 2008)). So Asphalt needed to plead and prove the inadequacy of legal remedies to prevail on the alter-ego claim. Absent that, the alter-ego claim fails.

## I.    The District Court's Ruling

We must first nail down the district court's basis for granting summary judgment against Asphalt on its alter-ego claim. The court cited *M.J.*, which held that to maintain an alter-ego claim, the plaintiff must establish that it lacks an adequate remedy at law. According to the court, Asphalt "failed to establish that it lacks access to an adequate remedy of law." App. vol. 6, at 1302. Indeed, Asphalt never "even argue[d], let alone establish[ed]" that its UFTA claim didn't provide it with such a remedy. *Id.* So Asphalt failed to plead *and* support an element of its alter-ego claim. Along the way, the district court noted that the UFTA claim "appear[s] to be legal in character." *Id.* But the court never held that fraudulent-transfer claims are legal. Nor did it hold that the UFTA claim in fact gave Asphalt an adequate remedy at law.

Yet on appeal, Asphalt does not challenge this ruling—which was about its failure to establish an element of the alter-ego claim. Instead, Asphalt frames its appeal as being about whether the fraudulent-transfer claim is legal

11

or equitable; whether the fraudulent-transfer claim, if legal, gave Asphalt an adequate remedy at law; and whether Utah's election-of-remedies doctrine should have precluded the district court from deciding the legal/equitable question before trial.[8] But the district court never resolved any of those issues. Asphalt could be correct on all these points, but that would not overcome Asphalt's failure to argue below that it lacked an adequate remedy at law. Those words are missing from its complaint and its summary-judgment briefing.[9] Asphalt never presented its appellate arguments to the district court.

Generally, arguments first made on appeal are forfeited and reviewable for only plain error. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 991 (10th Cir. 2019). But "[t]his forfeiture rule does not apply when the district court explicitly considers and resolves an issue of law on the merits." *Id*. Under this exception, we apply the normal standard of review for issues that were passed upon by the district court—even issues that the appellant failed to raise.

---

[8] Asphalt argues that the district court "explicitly or implicitly held" that (1) Asphalt's fraudulent-transfer claim is legal, not equitable; (2) the claim provided an adequate remedy; and (3) Asphalt had to choose between its fraudulent-transfer and alter-ego claims. Op. Br. at 20. Asphalt enlarges the district court's ruling. The district court granted summary judgment because Asphalt failed to plead and support an essential element of the alter-ego claim.

[9] In its reply brief, Asphalt argues that it did plead that it lacked a legal remedy. Asphalt cites its complaint allegations (1) that Asphalt had a valid judgment against Taryn Capital, and (2) that Taryn could not satisfy the judgment. These allegations do not show that Asphalt lacks a legal remedy. And even if Asphalt had done so, it would still have needed to support that element with facts in the record at summary judgment.

*Id.* at 991–92. We recognize that the issue of legal versus equitable claims was not the focal point of the parties' briefs below. As Asphalt points out, this issue occupied a mere two pages of summary-judgment briefing. Instead, the parties addressed whether Utah even recognizes alter-ego claims against LLCs and how the district court should weigh the alter-ego factors.

But the district court granted partial summary judgment on the ground that Asphalt had failed to argue for and support an element of its alter-ego claim—namely, that it lacked an adequate remedy at law. App. vol. 6, at 1320. Though the district court observed in passing that the UFTA claim "appear[s] to be legal in character," the district court did not need to rule on that ground; instead, it could grant summary judgment for Asphalt's failure to argue that it lacked an adequate remedy at law. *Id.* If Asphalt's UFTA claim were equitable, and provided no adequate remedy at law, then Asphalt needed to plead and argue that before the district court. But Asphalt now attacks the court's ruling on grounds that Asphalt never raised, that the court never addressed, and that wouldn't require reversal even if we found them persuasive.

"The first task of an appellant is to explain to us why the district court's decision was wrong." *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015). "It is the significant but limited job of our appellate system to correct errors made by the district court in assessing the legal theories presented to it, not to serve as 'a second-shot forum . . . where secondary, back-up theories may be mounted for the first time.'" *Richison v. Ernest Grp., Inc.*,

13

634 F.3d 1123, 1130 (10th Cir. 2011) (quoting *Tele-Communications, Inc. v. C.I.R.*, 104 F.3d 1229, 1233 (10th Cir. 1997)). And by failing "to explain what was wrong with the reasoning that the district court relied on in reaching its decision," an appellant forces us to affirm. *Nixon*, 784 F.3d at 1366. Attacking positions "not adopted by the district court" will get the appellant nowhere "if the reasons that were given by the district court go unchallenged." *Id*. On appeal, Asphalt asserts three legal arguments without addressing the district court's actual reasoning.[10] So we affirm.

## II.    Asphalt's fraudulent-transfer claim is legal.

Asphalt first argues that the district court erred by commenting that Asphalt's UFTA claim "appear[s] to be legal in character." App. vol. 6, at 1320. Giving Asphalt the benefit of the doubt, we address this argument assuming that the court passed on this issue. If the UFTA claim is in fact equitable, Asphalt says, the claim couldn't provide an adequate remedy *at law*. This issue is trickier than it may appear because although "a claim for damages" is "a quintessential legal remedy," *SCA Hygiene Prods. Aktiebolag v.*

---

[10] For the first time in its reply brief, Asphalt argues that these pleading requirements don't apply in federal court. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996). But "when state law creates a cause of action, it also defines the scope of that cause of action." *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1164 (10th Cir. 2017) (citing *Ragan v. Merchs. Transfer & Warehouse Co.*, 337 U.S. 530, 533 (1949)). Here, the inadequacy of a remedy at law is not a mere pleading requirement, but a *substantive* element of an alter-ego claim. So we enforce it like any other state substantive law.

*First Quality Baby Prods., LLC*, 530 U.S. 328, 333 (2017), fraudulent-transfer claims invoke the court's avoidance power, which seems equitable, *see* Utah Code Ann. § 25-6-8(1)(a).

Utah courts distinguish between legal and equitable claims based on "the nature of the rights asserted and the remedies sought in light of the facts of the case." *Jones v. Mackey Price Thompson & Ostler* (*Jones I*), 355 P.3d 1000, 1012 (Utah 2015) (citation omitted). Then, courts must "decide if that claim would have been cognizable at law or in equity at the time the Utah Constitution was adopted." *Id.* While undertaking this inquiry, courts are not bound by "the parties' characterization of the claims." *Id.* This framework mirrors the United States Supreme Court's test in *Granfinanciera*, the case cited by the district court here.

In *Granfinanciera*, the Court considered whether a defendant facing a fraudulent-transfer claim brought by a bankruptcy trustee was entitled to a jury trial. 492 U.S. at 36. Under the Seventh Amendment, jury trials are required only for "[s]uits at common law." *Id.* at 40–41 (quoting U.S. Const. amend. VII). Suits at common law are "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Id.* at 42 (quoting *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. (3 Pet.) 433, 447 (1830)). The Court framed the Seventh Amendment inquiry as a two-pronged test:

15

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first.

*Id.* (cleaned up).[11]

On the first prong, the Court explained that "actions to recover preferential or fraudulent transfers were often brought at law in late 18th-century England," even though "courts of equity sometimes provided relief in fraudulent conveyance actions." *Id.* at 43. Still, suits for "*monetary* relief would not have sounded in equity 200 years ago in England." *Id.* After all, suits in equity are "those where equitable rights *alone* were recognized." *Id.* (quoting *Parsons*, 28 U.S. at 447). After surveying some caselaw, the Court held that the trustee "would have had to bring his action to recover an alleged fraudulent conveyance of a determinate sum of money at law in 18th-century England, and that a court of equity would not have adjudicated it." *Id.* at 46–47.

On the second prong, the Court characterized "[t]he nature of the relief" as legal, not equitable. *Id.* at 47. Naming many of its precedents, the Court recounted that fraud cases were not cognizable in equity "to obtain only a decree for the payment of money by way of damages" when a legal remedy was available. *Id.* at 47–48. And analogizing to another bankruptcy fraudulent-

---

[11] The parties do not brief the *Granfinanciera* test. But they do focus on the nature of the remedy sought, which is functionally the same test. Because the district court cited *Granfinanciera* in its ruling, and because that case tracks with the *Jones I* test, we rely on it for its persuasive value.

16

transfer case, the Court cited (1) the plaintiff's "ascertained and definite" monetary damages and (2) the plaintiff's lack of a "call for an accounting or other equitable relief." *Id.* at 48–49 (quoting *Schoenthal v. Irving Tr. Co.*, 287 U.S. 92, 95 (1932)). Both prongs signified that the fraudulent-transfer claim was legal, so the Court held that the defendant was entitled to a jury trial. *Id.* at 64.[12]

Applying *Granfinanciera* and *Jones I*, Asphalt's fraudulent-transfer claim must be legal. Asphalt sought only ascertained and definite damages as a remedy under the UFTA. App. vol. 5, at 1271 (Am. Compl.) (requesting judgment on UFTA claim for "damages in the amount of all fraudulent transfers, plus interests and costs, including, but not limited to costs and reasonable attorney fees incurred in collection of the debt"); App. vol. 1, at 101–02 (Asphalt Mot. Summ. J.) ("Accordingly, the Court should . . . enter judgment . . . against Beall for fraudulent transfer in the amount of $448,708.04."). Borrowing from the Supreme Court's explanation of historical

---

[12] We rely on *Granfinanciera* for its persuasive value, but our historical analysis does not end there. In *Ottenburg v. Barnes*, 37 P. 267, 267 (Utah 1894), plaintiff-creditors brought a bill in equity to set aside a fraudulent assignment of the debtor's estate. The Supreme Court of the Territory of Utah ruled that courts of equity have jurisdiction when a party seeks the "cancellation of some writing, or the taking of an account, or some other act of adjudication which goes beyond a simple verdict in favor of one or the other party." *Id.* at 267–68. Because the plaintiff-creditors sought to "have the deed of assignment canceled," "an accounting," and the appointment of a receiver to distribute "the money among the parties," the courts of equity had jurisdiction over their suit. *Id.* at 268. We find this case consistent with *Granfinanciera*'s historical analysis.

fraudulent-transfer claims, Asphalt's claim for damages "would not have sounded in equity 200 years ago in England." *Granfinanciera*, 492 U.S. at 43. And nowhere did Asphalt ask for "an accounting or other equitable relief"— just money. *Id.* at 48–49; *see also Int'l Harvester Credit Corp. v. Pioneer Tractor & Implement, Inc.*, 626 P.2d 418, 421 (Utah 1981) ("Since this action concerned only money damages, the action was clearly a law action."); *Jones I*, 355 P.3d at 1012–15 (reasoning that "assumpsit" was the historical analog for a modern unjust-enrichment claim, that assumpsit was a claim at law, and that unjust enrichment's remedy, restitution, was available at law); *Volker-Scowcroft Lumber Co. v. Vance*, 103 P. 970, 972 (Utah 1909) ("[A] personal judgment apart from the granting of equitable relief could not be rendered in an action in equity.").[13]

Asphalt ticks through a few sources that it claims show that fraudulent-transfer claims are equitable. First, it cites *Jones v. Mackey Price Thompson & Ostler* (*Jones II*), 469 P.3d 879, 893 (Utah 2020), to support the "availability of equitable remedies in support of the collection of damages on a legal claim"— which Asphalt interprets to apply to its suit to collect on its domesticated arbitration award. Second, Asphalt cites language from another case that "[a]

---

[13] Even though prior Utah Supreme Court decisions had described unjust-enrichment claims as "equitable," the *Jones I* court clarified that this "meant merely to describe the way in which the claim should be approached," not to suggest that unjust-enrichment claims were equitable historically or remedially. 355 P.3d at 1015–16.

judgment creditor may litigate the question of a fraudulent conveyance . . . in a creditor's bill in equity." *Jensen v. Eames*, 519 P.2d 236, 239 (Utah 1974). Third, Asphalt cites a Utah Court of Appeals case that rejected as "contrary to Utah law" a "blanket rule that a request for money damages transforms an equitable claim into a legal one." *Anderson v. Larry H. Miller Commc'ns Corp.*, 351 P.3d 832, 842 (Utah Ct. App. 2015). Fourth, Asphalt cites some law review articles, including one which questions whether *Granfinanciera* was rightly decided. And finally, Asphalt criticizes *Granfinanciera* for having "nothing to do with the scope or content of Utah law." Op. Br. at 25.

We reject Asphalt's arguments. First, *Jones II* was discussing constructive trusts, an equitable remedy that Asphalt never sought here. Nor did Asphalt file a creditor's bill in equity to obtain a lien on Taryn Capital's equitable interest in Beall's property, as mentioned in *Jensen*. Next, *Anderson*'s comment about monetary relief not automatically being a legal remedy is true. But this was in the context of promissory estoppel, which Utah has historically recognized as an equitable claim. *Anderson*, 351 P.3d at 841. Asphalt has cited no Utah cases treating fraudulent-transfer claims as equitable when definite damages were the sole remedy sought. And as discussed earlier, even though *Granfinanciera* concerned federal bankruptcy law, its two-part test mirrors the Utah Supreme Court's test from *Jones I*, so we find its historical discourse highly persuasive.

19

To conclude, we hold that Asphalt's fraudulent-transfer claim is legal, not equitable.

### III. Asphalt's fraudulent-transfer claim provided an adequate remedy at law.

Even if Asphalt's UFTA claim is a legal claim, Asphalt argues that it still did not provide an adequate remedy at law.

"It is settled in Utah that 'the law will not imply an equitable remedy when there is an adequate remedy at law.'" *Thorpe*, 243 P.3d at 507 (quoting *UTCO Assocs., Ltd. v. Zimmerman*, 27 P.3d 177, 180 (Utah Ct. App. 2001)). As the United States Supreme Court put it nearly two centuries ago, "[i]t is not enough that there is a remedy at law; it must be plain and adequate, or in other words, as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity." *Boyce's Ex'rs v. Grundy*, 28 U.S. (3 Pet.) 210, 215 (1830). The Utah Supreme Court recognizes equitable relief "only when a court determines that damages are inadequate and that equitable relief will result in more perfect and complete justice." *Thurston v. Box Elder Cnty.*, 892 P.2d 1034, 1040 (Utah 1995). And elsewhere, in defining the irreparable harm needed for an injunction, the Utah Supreme Court similarly noted that a legal remedy is adequate when it is "as practicable and efficient toward the ends of justice as an injunction." *Hunsaker v. Kersh*, 991 P.2d 67, 69 n.1 (Utah 1999) (quoting 42 Am. Jur. 2d *Injunctions* § 39 (1969)).

20

In *Johnson v. Hermes Associates, Ltd.*, the Utah Supreme Court further clarified what may render a legal remedy inadequate. 128 P.3d 1151, 1157–58 nn. 7–8 (Utah 2005). The court explained that "the lack of adequate remedies at law may be demonstrated by showing that" (1) "alternative legal remedies, while available in theory, are immeasurable or merely speculative"; (2) "obtaining legal redress would require the commencement of multiple suits"; or (3) "an awarding of damages by an alternative remedy may be insufficiently compensatory in light of the harm caused by the defendant's conduct." *Id.* at 1157 n.7 (citation omitted). The court further noted that "inadequate legal remedies exist when a party is unlikely to be made whole by an award of monetary damages or some other legal, as opposed to equitable, remedy." *Id.* at 1158 n.8; *see also Mack v. Utah State Dep't of Com., Div. of Sec.*, 221 P.3d 194, 201 (Utah 2009) (quoting *Johnson*, 128 P.3d at 1158 n.8).

Without discussing *Johnson*, the parties debate whether the UFTA remedy was as practical and efficient as the alter-ego remedy. But under either test, Asphalt's fraudulent-transfer claim is adequate.

According to Asphalt, it all comes down to dollars and cents. Asphalt's alter-ego claim was worth the entire amount of its $2.3 million arbitration judgment. Yet Asphalt's UFTA claim "sought to recoup only 'the amount of all fraudulent transfers,' or a little bit less than $450,000." Op. Br. at 28 (citation omitted). For that reason, Asphalt says that its UFTA remedy was inadequate.

21

In response, Beall and Taryn Capital argue that Asphalt's summary-judgment motion claimed a much higher fraudulent-transfer amount—around $2 million.

Asphalt is correct that its summary-judgment motion sought $2 million (plus interest) for the alter-ego claim and about $450,000 for the fraudulent-transfer claim. Yet Asphalt fails to explain how it can limit its maximum fraudulent-transfer recovery to the $450,000 Asphalt sought in its summary-judgment motion. After all, in reviewing this claim, Asphalt said in its motion that it was undisputed that "Beall made hundreds of Fraudulent Transfers from approximately June 2012 to October 2016" and that "[t]he funds that were fraudulently transferred by Beall from Taryn's bank accounts at Wells Fargo and U.S. Bank amounted to approximately $2,000,000 over the course of approximately four years." App. vol. 1, at 75–76. Indeed, as incorporated in its motion, Asphalt attached a "fraudulent-transfer reference sheet" detailing over a thousand transfers from Taryn Capital to Beall and others totaling $1,968,260.35. App. vol. 3, at 538–62. Ahead of summary judgment, in the parties' joint statement of material facts, Asphalt claimed that Beall withdrew $3.9 million from Taryn Capital's bank accounts during that timeframe and that about only $129,000 accounted for Taryn Capital's "legitimate business expenses." Appellee's App. at 94–95, 122–23. And in its Amended Complaint, Asphalt declared that "Beall is personally liable for the total amount of all Fraudulent Transfers made by Taryn to Beall from June 9, 2012 until the

present." App. vol. 5, at 1269–70. Further, Asphalt requested judgment for "damages in the amount of all fraudulent transfers." *Id.* at 1271.

Plaintiffs cannot artificially adjust their damages this way to claim they have no adequate remedy at law and must resort to an equitable claim. *See TD Bank N.A. v. Hill*, 928 F.3d 259, 283 (3d Cir. 2019). In discussing the adequacy of a remedy at law for a copyright injunction, the United States Court of Appeals for the Third Circuit in *TD Bank* rejected a copyright holder's argument that because it had "abandoned its request for statutory damages, . . . it lack[ed] an adequate remedy at law." *Id.* at 282. The court reasoned that, "where an adequate remedy at law exists, 'the party seeking redress *must* pursue it.'" *Id.* (quoting *Parker v. Winnipiseogee Lake Cotton & Woolen Co.*, 67 U.S. (2 Black) 545, 551 (1862)). Thus, a plaintiff's failing to pursue what could have been an adequate legal remedy cannot "bolster its case for equitable relief." *Id.* at 283. In an unjust-enrichment case, the United States Court of Appeals for the Eighth Circuit likewise noted that the availability of equitable relief hinges on "the existence of, *not the efficacy of*, an adequate legal remedy." *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920 F.3d 560, 566 (8th Cir. 2019) (citation omitted).

Neither the parties nor this court have found a Utah case squarely rejecting a plaintiff's equitable claim because the plaintiff lowered the damages sought on a legal claim. But we have no reason to believe that the Utah Supreme Court would approve such a course. *See M.J.*, 371 P.3d at 35

23

(describing veil piercing as "a tool of last resort"). And Utah, too, employs a rule based on the remedy's existence, not its efficacy. *Buckner v. Kennard*, 99 P.3d 842, 857 (Utah 2004) ("Equitable jurisdiction is not justifiable simply because a party's remedy at law failed." (citing 27A Am. Jur. 2d *Equity* § 48 (2003))). No matter why Asphalt sought summary judgment for only a portion of the fraudulent-conveyance damages it identified, at trial Asphalt presumably could have sought the rest—certainly enough to satisfy Asphalt's arbitration judgment.

We hold that Asphalt's fraudulent-transfer claim afforded it an adequate remedy at law.

## IV.    The district court did not violate the election-of-remedies doctrine.

Even if Asphalt's UFTA claim were a legal claim, and even if it afforded Asphalt an adequate remedy at law, Asphalt faults the district court for prematurely forcing Asphalt to pick between its UFTA and alter-ego claims, which Asphalt says violated a core tenet of the election-of-remedies doctrine.

Because this is a diversity case, we apply Utah's election-of-remedies doctrine. *See McKinney v. Gannett Co.*, 817 F.2d 659, 671 (10th Cir. 1987). *But see Homeland Training Ctr., LLC v. Summit Point Auto. Rsch. Ctr.*, 594 F.3d 285, 294 n.1 (4th Cir. 2010) (noting that election-of-remedies doctrine is likely

procedural for *Erie* purposes, so federal law would apply).[14] In Utah, this doctrine bars plaintiffs from obtaining a double recovery or inconsistent recoveries for the same injury. *Help v. Chevron U.S.A. Inc.*, 361 P.3d 63, 78 (Utah 2015). The election-of-remedies doctrine also requires a plaintiff to choose between inconsistent theories of recovery. *Id.* Older Utah cases decided under strict pleading regimes required plaintiffs to "make[] a binding election between [conflicting] theories of liability upon filing a complaint." *Id.* (cleaned up). But in the mid-twentieth century, pleading rules were relaxed, so Utah plaintiffs could plead inconsistent remedies in the alternative. *Id.* at 79 (citing *Parrish v. Tahtaras*, 318 P.2d 642, 645 (Utah 1957)); *cf.* Fed. R. Civ. P. 8(a)(3) (permitting plaintiffs to plead "relief in the alternative"). The modern rule is that "a court may not require a plaintiff to elect between inconsistent claims prior to trial." *Help*, 361 P.3d at 79 (citation omitted). Only "[o]nce the fact-finder and the judge have resolved all factual and legal disputes related to the inconsistent theories of liability" must a plaintiff choose between those theories. *Id.* at 80 (citation omitted). Put differently, "an election is not binding 'until one remedy is pursued to a determinative conclusion.'" *Id.* (citation omitted). If Asphalt is correct that the district court required it to elect a remedy before trial, that would be reversible error.

---

[14] No matter whether federal or Utah law applies here, "[t]he parties did not raise the *Erie* issue, however, and since . . . [Utah] election of remedies law [likely] provides the same result as federal law, we [should] decline to rule upon it." *Homeland*, 594 F.3d at 293 n.1.

25

But the district court never purported to force a premature election between Asphalt's UFTA and alter-ego remedies. Rather, in response to the argument that Asphalt had failed to plead facts that "demonstrate that it lacks an adequate remedy at law," App. vol. 3, at 675, the district court ruled that Asphalt had "failed to even argue, let alone establish, that [the UFTA] claims do not provide it with an adequate remedy of law," App. vol. 6, at 1302. Asphalt is wrong to suggest that this ruling implicated its election of remedies. The court's ruling was about Asphalt's failure to support its alter-ego claim with evidence of an inadequate remedy at law. Again, a plaintiff must lack an adequate remedy at law to bring a veil-piercing claim in Utah. *M.J.*, 371 P.3d at 35–36. And Utah courts routinely grant summary judgment for defendants facing alter-ego claims without discussing elections of remedies. *E.g.*, *Jones & Trevor Mktg.*, 284 P.3d at 633. We discern no election-of-remedies error.

## CONCLUSION

For all these reasons, we affirm.

Entered for the Court

Gregory A. Phillips
Circuit Judge

26

*Asphalt Trader Ltd. v. Beall*, No. 22-4085

**EID**, Circuit Judge, concurring in the judgment.

I agree with the majority that Asphalt Trader waived its dispositive arguments on appeal, and that we should therefore affirm the district court's grant of summary judgment against Asphalt Trader. Because Asphalt Trader's waiver decides this appeal, I disagree with the majority's choice to reach any further issues.

I do not understand the district court to have imposed a "magic words" requirement for equitable claims; nor do I understand the majority to endorse such a requirement. After all, equitable jurisdiction in Utah does not turn on whether the plaintiff recited a particular incantation. *See Sweeney v. Happy Valley, Inc.*, 18 Utah 2d 113, 117 (1966) ("In circumstances where doubt exists as to whether the cause should be regarded as one in equity . . . [the trial court] is not bound by the ostensible form of the action, nor by the particular wording of the pleadings."). Nor do longstanding principles of equity contradict Utah's precedents. *See, e.g.*, *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 113 (Del. Ch. 2017) ("Chancery jurisdiction is not conferred by the incantation of magic words."); *Nevius v. Palomares*, 314 Or. App. 193, 199–200 (2021) ("Defendants cite no authority for the proposition that a complaint must include those magic words rather than simply include ultimate facts that would allow a factfinder to determine that plaintiffs did not possess an adequate legal remedy . . . .").

Here, the district court properly concluded that Asphalt Trader did not use *any* words, magic or otherwise, to plead or to argue an inadequate remedy at law. This failure of pleading and proof was dispositive below, and it was not contested on appeal.

Therefore, as the majority rightly notes, Asphalt Trader failed adequately "to explain what was wrong with the reasoning that the district court relied on in reaching its decision," and Asphalt Trader's argument is thus "waived because it is not adequately developed." *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366, 1368 (10th Cir. 2015).

As the majority agrees, that should decide this appeal. When an appellant has waived its only argument, we should go directly to "AFFIRMED." The majority therefore properly concludes its discussion of Asphalt Trader's waiver with the sentence: "So we affirm." Maj. Op. at 15. Regrettably, that conclusion appears only one-third of the way through the majority's discussion of the issues. After affirming, the majority proceeds to decide several questions that do not bear on the outcome of this case. *See* Maj. Op. at 15–27.

The majority's decision to consider unnecessary issues in this case is made worse by its decision to resolve a close question of Utah state law. The majority, "assuming that the [district] court passed on th[e] issue," proclaims that Asphalt Trader's "fraudulent-transfer claim is legal," not equitable, under Utah law. Maj. Op. at 15, 20. But, as the majority recognizes, the question "is trickier than it might appear." *Id*. at 15.

Longstanding Utah precedents, for example, generally point to equity. For instance, the Utah Supreme Court has said, "in cases where the debtor has become insolvent, and unable to pay all his debts, that a court of equity may be resorted to for the purpose of determining whether or not fraud has been perpetrated upon any of the creditors, by deed of assignment or otherwise." *Wyeth Hardware & Mfg. Co. v. James-*

2

*Spencer-Bateman Co.*, 15 Utah 110, 110 (1897).  The Utah Supreme Court continued to assume in later cases that such an action is proper only at equity.  In 1914 the Court remarked, in dictum, that an action for fraudulent transfer "is an equitable proceeding pure and simple."  *Com. Nat'l Bank of Salt Lake City v. Page & Brinton*, 45 Utah 14, 14 (1914).  In *Lund v. Howell*, the Utah Supreme Court construed an action for fraudulent conveyance as an action "to cancel, annul, and set aside an assignment of an undivided interest in an estate," *i.e.*, a traditional equitable action.  92 Utah 232, 232 (1937).  Utah cases from the mid-20th Century tend to agree.  For example, in *Givan v. Lamberth*, the Utah Supreme Court noted in passing that an action "to set aside, as fraudulent, certain conveyances" was "a case in equity," even though it was combined with "an action for money."  10 Utah 287, 288–89 (1960).  This authority demonstrates that Utah law on the matter is, at best, mixed, making it difficult to predict what the Utah Supreme Court would do in this situation.  And "in diversity cases" such as this, our only task "is to predict how the state supreme court would rule."  *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1093 (10th Cir. 2010) (Gorsuch, J.); *cf. Erie R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938).

Under these circumstances I would tread lightly and stop our analysis with Asphalt Trader's waiver.  Nevertheless, I agree that the district court's grant of summary judgment must be affirmed.  Therefore, I respectfully concur in the judgment.

3